JIAN SONG LIU, Petitioner

v.

ATTORNEY GENERAL OF
the UNITED STATES,
Respondent.

No. 08–2737.

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
LAR 34.1(a) June 11, 2009.

Opinion filed: June 17, 2009.

John Wang, Esq., New York, NY, for
Petitioner.

Jeffrey L. Menkin, Esq., Ann C. Varnon,
Esq., United States Department of Justice,
Office of Immigration Litigation, Washing-
ton, DC, for Respondent.

Before: AMBRO, FISHER and
JORDAN, Circuit Judges.

OPINION

PER CURIAM.

Jian Song Liu, a native and citizen of the
People's Republic of China, petitions for
review of the BIA's decision denying his
applications for asylum, withholding of re-
moval and protection under the Conven-
tion Against Torture ("CAT").

Liu entered the United States on June
12, 2005, without any valid entry, travel or
identity documents. At the airport, Liu
underwent a credible fear interview and
stated that he fled China because of per-
sistent ridicule by his father and other
people in his life. The government issued
a Notice to Appear, charging him with
removability under INA § 212(a)(7)(A)(i).
Liu conceded removability and applied for
asylum, withholding and protection under
CAT.

At the merits hearing, Liu testified that
he suffered past persecution on the basis
of his practice of Falun Gong, and that he
feared future persecution on that basis and
on account of his illegal exit from China.
Liu testified that his uncle, Guang Lin Li,
introduced him to Falun Gong in January
2002, and that he eventually began practic-
ing once a week. On September 20, 2003,
at 8 p.m., the police stormed a house
where Liu and another individual were
practicing Falun Gong. They arrested Liu,
put him in handcuffs and took him to a

police station nearby. They smacked him, his face hit the corner of the table, and his head started bleeding. They detained him overnight. The next day, they interrogated him again and questioned his reasons for practicing Falun Gong. Liu told them he believed that it would promote good health. After shining a light in Liu's face, the police left. Liu remained in detention. The third interrogation occurred on September 27, 2003. The police brought Liu into a room and forced him to review material that disparaged Falun Gong. He was eventually released. Liu testified that the government maintained a record of his arrest, such that he could not live in the manner he had lived before. Liu testified that his parents then paid a smuggler (known as a "snakehead") $60,000 to bring him to the United States.

On cross-examination, Liu admitted that he never mentioned Falun Gong during his credible fear interview, which was conducted in Foo Chow, his native language. Liu explained that the smuggler counseled him not to mention Falun Gong, and that he felt compelled to follow his advice. As a result, Liu falsely told the immigration officer that he feared returning to China because he had lived a life of ridicule and isolation: people including his own father made fun of him because of his poor eyesight and slow manner of walking and working. Among other documentary evidence, Liu submitted a letter from Li, the man who introduced him to Falun Gong, to corroborate his arrest, and photographs showing Liu holding particular Falun Gong poses.

The IJ denied relief on the basis that Liu lacked credibility and had failed to meet his evidentiary burden. The IJ determined that Liu lacked credibility because of inconsistent testimony. Specifi-

cally, the IJ noted that Liu completely omitted any mention of Falun Gong during his credible fear interview.[1] The IJ also noted that Liu had described Guang Ling Li as his "uncle," even though Li describes himself in a letter as a "close friend" of Liu. Liu explained that followers of Falun Gong often refer to each other as a "close friend," but the IJ refused to believe that Liu's uncle would have completely omitted any mention of their blood tie.

The IJ also faulted Liu for failing to "show the genuineness" of his Falun Gong practice in the U.S. or in China. The IJ determined that Liu had not established a foundation from which the IJ could determine what the poses meant, or their fidelity to Falun Gong. The IJ also concluded that Liu would not face imprisonment or arrest upon return to China for his illegal exit, but that he might encounter a brief detention while waiting for his family members to retrieve him.

The BIA adopted and affirmed the decision of the IJ. Specifically, the BIA found no clear error in the IJ's adverse credibility determination because the BIA agreed that Liu's explanation for why he lied at the credible fear interview was not convincing. The BIA also referenced an investigative report affirming the authenticity of Liu's supporting medical documents. The BIA determined that, even assuming the authenticity of these documents, ample evidence supported the IJ's credibility determination. Liu then filed this petition for review.

We have jurisdiction over final orders of removal. 8 U.S.C. § 1252(a)(1). "[W]hen the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, [this Court has] authority to review the decisions of both the IJ and the

---

1. We note that Liu has not challenged the manner in which the credible fear interview was conducted.

BIA." *Chen v. Ashcroft,* 376 F.3d 215, 222 (3d Cir.2004). This Court reviews the factual findings for substantial evidence. *Briseno-Flores v. Att'y Gen.,* 492 F.3d 226, 228 (3d Cir.2007). The IJ's and BIA's decision will not be disturbed "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Yu v. Att'y Gen.,* 513 F.3d 346, 348 (3d Cir.2008) (quotation omitted).

In his petition for review, Liu contends that the BIA engaged in improper fact-finding by considering an investigative report affirming the authenticity of documents Liu had submitted regarding his medical care and prescription. Liu contends that the BIA should have remanded his case to the IJ to consider the report. This argument is unavailing because the BIA considered the report favorably to Liu. He suffered no disadvantage as a result of the BIA's crediting and considering the report.

Liu also contends that the IJ's adverse credibility determination is not supported by substantial evidence. We disagree. Inconsistencies in an applicant's testimony may support an adverse credibility determination.[2] *Chen,* 376 F.3d at 224. Here, the IJ identified specific inconsistencies in Liu's testimony that support her conclusion, principally the discrepancy between Liu's credible fear interview and his testimony at the merits hearing.[3] The BIA affirmed the IJ's decision and considered Liu's explanation for the discrepancy between the interviews unpersuasive. As Liu admitted to lying at the credible fear interview and offered an implausible explanation—that the smuggler told him *not* to

mention Falun Gong, which is a legitimate basis for an asylum claim—we do not believe that a reasonable factfinder would be compelled to conclude that Liu was credible. Accordingly, substantial evidence supports the IJ's and BIA's conclusion. We will deny the petition for review.

---

**2.** As Liu filed his application for asylum after May 11, 2005, the REAL ID Act applies to his claim, and even minor inconsistencies are sufficient when considering the "totality of the circumstances." 8 U.S.C. § 1158(b)(1)(B)(iii).

**3.** An IJ may properly rely on substantial discrepancies between statements given at an airport interview and at the merits hearing when the airport interview was conducted in the petitioner's native language, and there are no concerns about the manner in which the interview was conducted or transcribed. *See Chen,* 376 F.3d at 224.